01

02

03

04

UNITED STATES DISTRICT COURT

05 FOR THE EASTERN DISTRICT OF CALIFORNIA

06 JOHN HENRY REED,                              )
                                                )
07        Petitioner,                           )    CASE NO. 2:07-cv-00595-RAJ-JLW
                                                )
08        v.                                    )
                                                )
09 WARDEN CLAY, *et al.*,                       )    REPORT AND RECOMMENDATION
                                                )
10        Respondents.                          )
   _____ )

11

12        I.        INTRODUCTION

13             Petitioner is a California prisoner who is currently incarcerated at the Gabilan

14 Conservation Camp #38 in Soledad, California.  He seeks relief under 28 U.S.C. § 2254 from

15 his 2004 jury conviction in Sacramento County Superior Court for selling cocaine base.  (*See*

16 Docket 1.)  Respondent has filed an answer to the petition, together with relevant portions of

17 the state court record, and petitioner has filed a traverse in reply to the answer.  (*See* Dkt. 18;

18 Dkt. 21.)  The Court, having thoroughly reviewed the record and briefing of the parties,

19 recommends the Court deny the petition, and dismiss this action with prejudice.

20        II.    FACTUAL AND PROCEDURAL HISTORY

21             The probation officer's report described petitioner's commitment offense as follows:

22             [O]n October 17, 2000 … a confidential informant (CI) made
               arrangements with a subject, later identified as the [petitioner],

REPORT AND RECOMMENDATION - 1

01        to purchase an "8 ball" of cocaine base.  Detectives observed the [petitioner] arrive at a pre-designated buy location.  The

02        drug transaction was later completed and the CI provided officers approximately 3.5 grams of Valtox positive cocaine

03        base.  The CI was shown a photograph of John Henry Reed, the [petitioner], and positively identified him as the person who

04        sold him the cocaine base.

       The [petitioner] was subsequently arrested on October 25, 2000,

05        for violating Section 11352(a) H&S, 11351.5 H&S, 245(c) P.C., 3056 P.C., and 182(a)(1) P.C. and booked into the Main Jail

06        without incident….

07 (Dkt. 19, Lodged Document 23 at 494.)

08       The Sacramento County Superior Court held a preliminary examination on May 31

09 and June 1, 2001, to determine whether there was probable cause to believe petitioner was

10 guilty of committing a felony offense, sale of cocaine base.  (*See id*. at 21-81.)  Petitioner's

11 challenges to various aspects of this preliminary hearing form the basis for his habeas

12 challenge.

13       During the hearing, the Deputy District Attorney called a single witness, Detective

14 Scott Maldonado, a law enforcement officer with nine years experience, who described the

15 narcotics investigation and "controlled buy" of cocaine which led to petitioner's arrest.  (*See*

16 *id*. at 25-75.)  Specifically, Detective Maldonado testified that he and his partner, Detective

17 Chaplin, made contact with a confidential informant in the course of a narcotics investigation

18 around 5:45 in the afternoon of October 17, 2000.  (*See id*. at 25.)  The confidential informant

19 told the detectives that he could purchase cocaine from an adult black male he knew as "J.R."

20 (*See id*. at 26.)  After Detective Maldonado had strip-searched the confidential informant, the

21 informant used a telephone in the presence of the officers to arrange a purchase of an "eight-

22 ball" of rock cocaine from "J.R."  (*See id*. at 27.)  Detective Maldonado then listened to the

01    narcotics transaction through a one-way radio transmitter, conducted another strip search of

02    the confidential informant as soon as the transaction had concluded, and booked the "eight-

03    ball" of cocaine purchased from "J.R." into evidence. (*See id*. at 32-34.) Detective

04    Maldonado was also present when the informant subsequently identified a photograph of

05    petitioner as "J.R.," the suspect who had sold him the cocaine during the "controlled buy."

06    (*See id*. at 33-34.)

07       When the Deputy District Attorney asked Detective Maldonado to estimate the

08    number of occasions he "had contact with that same confidential informant in the past,"

09    Detective Maldonado responded, "Um, two." (*Id*.) When the Deputy District Attorney asked

10    whether Detective Maldonado, "in [his] past encounters with the confidential informant …

11    [found] that the information that the confidential informant provided to you was reliable,"

12    Detective Maldonado answered, "Yes." (*Id*.) When he was asked during cross-examination

13    "[w]hat led [him] to render the opinion on direct examination that … the confidential

14    informant had provided reliable information," he responded that the "[i]nformation was

15    corroborated and arrests were made." (*Id*. at 41.)

16       During the proceeding, Detective Maldonado occasionally used the two-page arrest

17    report prepared by Detective Chaplin to refresh his recollection regarding details of the

18    investigation. (*See id*. at 29-31.) The arrest report noted that Detective Chaplin and Detective

19    Maldonado "made contact with a confidential informant in the mid-town area of Sacramento"

20    on October 17, 2000, but did not discuss any contacts with the confidential informant taking

21    place prior to that date. (*See* Dkt. 16, LD 5, Ex. C at 1.) The report then described the

22    "controlled buy" carried out on October 17, 2000, as well as the confidential informant's

REPORT AND RECOMMENDATION - 3

01    positive identification of petitioner "as J.R. who sold cocaine base to C.I." after viewing a

02    photograph of petitioner on October 24, 2000.  (*Id*. at 2.)

03           The identity of the confidential informant was fully disclosed at trial, and he testified

04    as a witness for the prosecution.  (See Dkt. 19, LD 24 at 304-30.)  During the preliminary

05    hearing, however, Detective Maldonado did not disclose the informant's identity.  (*See id*.,

06    LD 23 at 22-23 and 37-43.)  Over defense counsel's continuing objection that any evidence

07    obtained from the confidential informant was "unreliable" unless the informant's identity was

08    disclosed, the superior court admitted Detective Maldonado's testimony, and found that the

09    informant's identity qualified as privileged "official information" in order to protect his or her

10    safety.  (*See id*. at 23-26.)  *See also* California Evidence Code § 1040 (protecting against

11    disclosure of "official information" where such disclosure "is against the public interest

12    because there is a necessity for preserving the confidentiality of the information that

13    outweighs the necessity for disclosure in the interest of justice…..").  At the conclusion of the

14    hearing, the superior court found "sufficient cause to believe that the [petitioner] John Henry

15    Reed is the person guilty of … the felony offense that has been established in this matter.

16    He'll be held to answer for further proceedings."  (*See* Dkt. 19, LD 23 at 76.)

17           An amended information dated January 14, 2002, charged petitioner with one count of

18    sale of a controlled substance, cocaine base, committed on or about October 17, 2000, in

19    violation of Health and Safety Code § 11352(a).  (*See* Dkt. 16, LD 3 at 1; Dkt. 19, LD 23 at

20    106-08.)  The information also alleged four prior convictions.  (*See* Dkt. 19, LD 23 at 106-

21    07.)  Petitioner's first trial resulted in a mistrial on June 18, 2002, after the jury announced it

22    could not reach a verdict.  (*See* Dkt. 16, LD 3 at 2.)  During petitioner's second jury trial, he

01  was convicted of one count of sale of cocaine base on August 20, 2004.  (*See id*., LD 1 at 1.)

02  Petitioner also admitted all four of the prior conviction allegations set forth in the information,

03  which were used to enhance his sentence.  (*See id*. at 2-3.)  He originally received an

04  aggregate term of thirteen (13) years.  (*See id*., LD 1 at 1.)

05        Petitioner, through counsel, appealed his judgment and sentence to the California

06  Court of Appeal, contending that one of his prior convictions should not have been used to

07  enhance his sentence.  (*See* Dkt. 16, LD 4.)  Respondent conceded that the Court should strike

08  one of petitioner's sentence enhancements.  (*See id*., LD 3 at 4.)  Accordingly, the California

09  Court of Appeal modified petitioner's sentence from thirteen (13) to ten (10) years.  (*See id*.,

10  LD 4.)  The Court affirmed petitioner's conviction and sentence in all other respects.  (*See id*.)

11        On June 5, 2006, petitioner filed a petition for writ of habeas corpus with the

12  California Court of Appeal claiming ineffective assistance of appellate counsel, and asserting

13  that the trial court's denial of his motion to dismiss the information for lack of probable cause

14  pursuant to California Penal Code § 995 violated his constitutional rights under the

15  Confrontation Clause and Due Process Clause.  (*See id*., LD 5.)  The California Court of

16  Appeal denied the petition without comment on June 8, 2006.  (*See id*., LD 6.)  Petitioner

17  promptly filed a petition for review of this decision with the California Supreme Court, but

18  that petition was also denied without comment on August 2, 2006.  (*See id*., LD 7; *id*., LD 8.)

19        Petitioner filed the instant federal petition on March 28, 2007.  (*See* Dkt. 1 at 1.)

20  Respondent concedes in his answer to the petition that petitioner has exhausted his alleged

21  claims for relief, and does not dispute that the petition was timely.  (*See* Dkt. 18 at 4.)

22

REPORT AND RECOMMENDATION - 5

01      III.    FEDERAL CLAIMS FOR RELIEF

02          Petitioner contends that the Sacramento County Superior Court erred by denying his

03  motion to dismiss the information for lack of probable cause.  (*See* Dkt. 1 at 5-7.)

04  Specifically, he claims the superior court erroneously overruled petitioner's hearsay

05  objections during the preliminary hearing, and admitted out-of-court statements made by the

06  confidential informant in violation of petitioner's rights under the Confrontation Clause and

07  Due Process Clause.  (*See id*. at 5-6.)  He also asserts that his federal due process rights were

08  violated by the prosecution's "subordination of perjur[e]d" testimony by Detective

09  Maldonado during the preliminary hearing, as well as the inclusion of false information in

10  Detective Chaplin's arrest report.  (*See id*. at 7.)  As a result, petitioner contends that he is

11  entitled to habeas relief.  (*See id*. at 5-7.)

12      IV.    STANDARD OF REVIEW

13          The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

14  petition because it was filed on March 28, 2007, after the enactment of AEDPA.  *See Lindh v.*

15  *Murphy*, 521 U.S. 320, 326-27 (1997).  Because petitioner is in custody of the California

16  Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the

17  exclusive vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th

18  Cir.), *cert. denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a

19  habeas petition by a state prisoner in custody pursuant to a state court judgment….").  Under

20  AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the

21  merits in state court unless petitioner demonstrates that the highest state court decision

22  rejecting his petition was either "contrary to, or involved an unreasonable application of,

01  clearly established Federal law, as determined by the Supreme Court of the United States," or

02  "was based on an unreasonable determination of the facts in light of the evidence presented in

03  the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

04      As a threshold matter, this Court must ascertain whether relevant federal law was

05  "clearly established" at the time of the state court's decision.  To make this determination, the

06  Court may only consider the holdings, as opposed to dicta, of the United States Supreme

07  Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  In this context, Ninth Circuit

08  precedent remains persuasive but not binding authority.  *See id.* at 412-13; *Clark v. Murphy*,

09   331 F.3d 1062, 1069 (9th Cir. 2003).

10      The Court must then determine whether the state court's decision was "contrary to, or

11  involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.

12  Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

13  grant the writ if the state court arrives at a conclusion opposite to that reached by [the

14  Supreme] Court on a question of law or if the state court decides a case differently than [the]

15  Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

16  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

17  state court identifies the correct governing legal principle from [the] Court's decisions but

18  unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

19  times, a federal habeas court must keep in mind that it "may not issue the writ simply because

20  [it] concludes in its independent judgment that the relevant state-court decision applied clearly

21  established federal law erroneously or incorrectly.  Rather that application must also be

22  [objectively] unreasonable."  *Id.* at 411.

REPORT AND RECOMMENDATION - 7

01      In each case, the petitioner has the burden of establishing that the state court decision

02 was contrary to, or involved an unreasonable application of, clearly established federal law.

03 *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

04 whether the petitioner has met this burden, a federal habeas court looks to the last reasoned

05 state court decision because subsequent unexplained orders upholding that judgment are

06 presumed to rest upon the same ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

07 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).  Where, as in this case, the

08 state courts have reviewed the claims and denied them without comment, the federal court

09 conducts an independent review of the record "to determine whether the state court clearly

10 erred in its application of controlling federal law."  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th

11 Cir. 2000).

12      Finally, AEDPA requires federal courts to give considerable deference to state court

13 decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

14 Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

15 *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

16 (9th Cir. 1993)).

17      V.      DISCUSSION

18      A.      *Confrontation Clause Claim Related to Hearsay Testimony*

19      Petitioner claims that the information charging him with the commitment offense

20 should have been set aside by the superior court pursuant to his motion under California Penal

21 Code § 995, which provides that "an information shall be set aside by the court in which the

22 defendant is arraigned, upon his or her motion … [if the defendant [was] committed without

01   reasonable or probable cause."  Cal. Penal Code § 995.  (*See* Dkt. 1 at 5-7; Dkt. 19, LD 23 at

02   82-94.)  Specifically, petitioner asserts that probable cause was not established during his

03   preliminary hearing because the superior court admitted, over petitioner's hearsay objections,

04   unreliable hearsay statements made by the confidential informant, Jessie Bennett, as related

05   by Detective Maldonado.  (*See* Dkt. 1 at 5-6.)  Petitioner argues that his rights under the

06   federal Confrontation Clause were violated by the admission of this hearsay testimony during

07   the preliminary hearing.  (*See id*. at 5-7; Dkt. 21 at 7-12.)

08          To the extent that petitioner is arguing the superior court violated California Penal

09   Code § 995 by failing to grant his motion to dismiss the information following the

10   preliminary hearing, he is asserting a state law claim.  (*See* Dkt. 1 at 5-7.)  State law claims

11   are not cognizable in a federal habeas proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

12   (1991) ("Federal habeas corpus relief does not lie for errors of state law … it is not the

13   province of the federal habeas court to reexamine state-court determinations on state-law

14   questions.").  As discussed above, this Court is limited to determining whether the state court

15   decision denying petitioner's request for habeas relief "clearly erred in its application of

16   controlling *federal* law."  *Delgado*, 223 F.3d at 982 (emphasis added).

17          With respect to petitioner's contention that his rights under the federal Confrontation

18   Clause were violated during the preliminary hearing, the U.S. Supreme Court has consistently

19   held that "[t]he right to confrontation is basically a trial right."  *Barber v. Page*, 390 U.S. 719,

20   725 (1968)).  *Accord Kentucky v. Stincer,* 482 U.S. 730, 737-39 (1987) (noting that the "right

21   to confrontation is a functional one for the purpose of promoting reliability in a criminal

22   trial….");  *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) ("The opinions of this Court show

REPORT AND RECOMMENDATION - 9

01  that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the

02  types of questions that defense counsel may ask during cross-examination."); *California v.*

03  *Green*, 399 U.S. 149, 156-57(1970) ("[I]t is this literal right to 'confront' the witness at the

04  time of trial that forms the core of the values furthered by the Confrontation Clause.").  The

05  federal confrontation right "includes both the opportunity to cross-examine and the occasion

06  for the jury to weigh the demeanor of the witness.  A preliminary hearing is ordinarily a much

07  less searching exploration into the merits of a case than a trial, simply because its function is

08  the more limited one of determining whether probable cause exists to hold the accused for

09  trial." *Barber*, 390 U.S. at 725.

10       The U. S. Supreme Court squarely held in *Gerstein v. Pugh* that the "timely judicial

11  determination of probable cause" required by the Fourth Amendment does not also require

12  "the full panoply of adversary safeguards – counsel, confrontation, cross-examination, and

13  compulsory process."  420 U.S. 103, 119 (1975).  Rather, the "issue [of] whether there is

14  probable cause for detaining the arrested person pending further proceedings … can be

15  determined reliably without an adversary hearing." *Id*. at 120.  Specifically, "[t]he standard is

16  the same as that for arrest.  That standard – probable cause to believe the suspect has

17  committed a crime – traditionally has been decided by a magistrate [judge] in a nonadversary

18  proceeding on hearsay and written testimony, and the Court has approved these informal

19  modes of proof." *Id*.  Thus, although the U.S. Supreme Court has acknowledged that

20  confrontation and cross-examination "may enhance the reliability of probable cause

21  determinations in some cases," it has held that "[i]n most cases ... their value would be too

22  slight to justify holding, as a matter of constitutional principles, that these formalities and

01   safeguards designed for trial must also be employed in making … [a] determination of

02   probable cause." *Id.* at 121-22.

03          Similarly, when the California Supreme Court considered whether the admission of

04   hearsay testimony during a defendant's preliminary hearing violated the federal Confrontation

05   Clause, it noted that California law also "allow[s] an investigating officer to relate at the

06   preliminary hearing any relevant statements of victims or witnesses, if the testifying officer

07   has sufficient knowledge of the crime or the circumstances under which the out-of-court

08   statement was made so as to meaningfully assist the magistrate [judge] in assessing the

09   reliability of the statement." [1]   *Whitman v. Superior Court*, 54 Cal.3d 1063, 1075 (1991).  In

10   fact, "the magistrate [judge may] base a finding of probable cause entirely on that testimony."

11   *Id*.  Specifically, the *Whitman* court explained that a recently enacted initiative, Proposition

12   115, amended the language of the California Constitution and California Penal Code to

13   declare hearsay evidence admissible at preliminary hearings to establish probable cause to

14   believe a defendant committed a felony offense.  *See id.* at 1070; Cal. Const. art. I § 30(b);

15   Cal. Penal Code §§ 866(b) and 872(b).  The *Whitman* court then concluded that preliminary

16   hearings in California "sufficiently resembl[e] the Fourth Amendment probable cause hearing

17   examined in *Gerstein* … to meet federal confrontation clause standards despite reliance on

18   hearsay evidence."  *Id*. at 1082 (*citing Gerstein*, 420 U.S. 103).

19          Accordingly, petitioner's rights under the federal Confrontation Clause are

20   inapplicable during a preliminary hearing held to establish probable cause.  *See Gerstein*, 420

21   ────────────────

22          [1] Petitioner's contention, in his traverse, that Detective Maldonado was not qualified to testify
during his preliminary hearing under the standards set forth by the California Supreme Court in
*Whitman* is not cognizable in this federal habeas proceeding.  (*See* Dkt. 21 at 15-16.)  *See also Estelle*,
502 U.S. at 67-68.

01 U.S. at 119-24.  His contention that the admission of hearsay statements during his

02 preliminary hearing violated his rights under the Confrontation Clause is therefore unavailing.

03     B.     *Due Process Clause Claim Related to Hearsay Testimony*

04         Petitioner also argues that the admission of the confidential informant's hearsay

05 statements during his preliminary hearing violated his federal due process rights.  (*See* Dkt. 1

06 at 5-7; Dkt. 21 at 7-12.)  Although petitioner acknowledges the absence of federal authority to

07 support his claim, he nevertheless asserts that the admission of hearsay testimony during his

08 preliminary hearing "clearly violates all principles of due process…."  (Dkt. 21 at 8.)

09         Conclusory allegations, without more, cannot provide a basis for habeas relief, and

10 petitioner failed to cite any federal authority to support his federal due process claim.  *See*

11 *Jones v. Gomez,* 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations are

12 not sufficient to support habeas relief); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002)

13 (holding that it is petitioner's burden to show he is in custody in violation of the Constitution).

14 Accordingly, I recommend this Court find that petitioner's federal due process rights were not

15 violated by the admission of hearsay testimony during petitioner's preliminary hearing.

16     C.     *Due Process Clause Claim Related to Allegedly Perjured Testimony*

17         Petitioner contends that his federal due process rights were violated by the

18 prosecution's knowing use of perjured testimony during his preliminary hearing, as well as

19 the inclusion of false information in an arrest report, in order to obtain a conviction.

20 Specifically, petitioner alleges that Detectives Maldonado and Chaplin knew that their

21 "confidential informant," Jessie Bennett, was unreliable, but nevertheless misrepresented him

22 during the preliminary hearing as a "reliable confidential informant" with whom the

REPORT AND RECOMMENDATION - 12

01  detectives had prior dealings in other narcotics investigations.  Because "[t]hese officers and

02  the Deputy District Attorney knew there [were never] any prior contacts with the allegedly

03  confidential informant to substantiate reliability as untruthfully stated in police reports and

04  perjured testimony at the preliminary examination," petitioner claims their conduct was "so

05  outrageous [it] violated the fundamental fairness required by the due process clause…."[2]

06  (Dkt. 1 at 7; Dkt. 21 at 21.)

07          The U.S. Supreme Court has long held that a criminal conviction may violate a

08  defendant's federal due process rights if it is obtained through testimony or evidence that the

09  prosecutor knows to be false, or later discovers to be false and allows to go uncorrected.  *See*

10  *Napue v. People of the State of Illinois*, 360 U.S. 264, 269-70 (1959).  *Accord Alcorta v.*

11  *Texas*, 355 U.S. 28, 31 (1957); *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Mooney v.*

12  *Holohan*, 294 U.S. 103, 112-13 (1935); *Jackson v. Brown,* 513 F.3d 1057, 1071 (9th Cir.

13  2008) ("The Supreme Court has long held that a conviction obtained using knowingly

14  perjured testimony violates due process.").  A due process violation can result from the

15  prosecution's presentation of false evidence or testimony during preliminary proceedings, as

16  well as during a criminal trial.  *See Hayes v. Brown*, 399 F.3d 972, 979-80 (9th Cir. 2005)

17  (holding that the prosecution violated a defendant's due process rights by knowingly making

18  false representations to the trial judge during the defendant's preliminary examination, in

19          [2] Petitioner cites *U.S. v. Russell*, 411 U.S. 423 (1973), in support of his contentions.  (*See* Dkt.
20  21 at 27.)  He argues that the *Russell* decision demonstrates that "instances of police misconduct as
    outrageous as these in the present case require the criminal charges [against petitioner be] dismissed."
    *Id*.  Contrary to his assertions, however, *Russell* is inapplicable to petitioner's due process claim.
21  Specifically, *Russell* involved the affirmative defense of entrapment.  *See Russell*, 411 U.S. at 432
    (holding that an undercover narcotics agent who provided an essential, but legal, ingredient to a
22  defendant being investigated for illicitly manufacturing a drug, did not violate the defendant's due
    process rights by entrapping him).  In contrast, petitioner's due process claim involves alleged
    subornation of perjury his preliminary hearing.

01  addition to presenting false evidence to the jury during the subsequent trial).

02  Furthermore, *Napue* does not only prohibit subornation of perjury. *See Hayes*, 399

03  F.3d at 980-81 (rejecting the State's claim that "it is constitutionally permissible for [the State

04  to] knowingly present false evidence … as long as the witness used to transmit the false

05  information is kept unaware of the truth" and therefore "did not commit perjury."). Rather,

06  "*Napue*, by its terms, addresses the presentation of false *evidence*, not just subornation of

07  perjury." *Id.* at 981 (*citing Napue*, 360 U.S. at 269). "There is nothing in *Napue,* its

08  predecessors, or its progeny, to suggest that the Constitution protects defendants only against

09  the knowing use of perjured testimony. Due process protects defendants against the knowing

10  use of any false evidence by the State, whether it be by document, testimony, or any other

11  form of admissible evidence." *Id.* (*citing Phillips v. Woodford,* 267 F.3d 966, 984-85 (9th

12  Cir. 2001)).

13  Mere inconsistencies in the evidence, however, do not constitute the knowing use of

14  false testimony by the prosecution, and it is "within the province of the jury to resolve the

15  disputed testimony." *See United States v. Geston,* 299 F.3d 1130, 1135 (9th Cir. 2002).

16  Thus, prosecutors will not be held accountable for discrepancies in testimony or evidence

17  where there is no evidence from which to infer prosecutorial misconduct. *See United States v.*

18  *Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995). A petitioner must establish a factual basis for

19  attributing knowledge to the government that the testimony or evidence at issue was false.

20  *See Morales v. Woodford,* 388 F.3d 1159, 1179 (9th Cir. 2004), *as amended* Oct. 21, 2004)

21  (rejecting a due process claim where petitioner "sets out no factual basis for attributing any

22  misconduct, any knowing presentation of perjury, by the government….").

REPORT AND RECOMMENDATION - 14

01          Thus, in order to prevail on a federal due process claim for habeas relief, a petitioner

02   must demonstrate that (1) the testimony or evidence was actually false; (2) the prosecution

03   knew or should have known that the testimony or evidence was actually false; and (3) the

04   false testimony or evidence was material.  *See Hayes*, 399 F.3d at 984 (*quoting United States*

05   *v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)) (setting forth the requirements for a

06   petitioner to prevail under the *Mooney-Napue* line of cases).  In assessing "materiality" under

07   *Napue*, a federal habeas court must determine whether there is "any reasonable likelihood that

08   the false testimony [or evidence] could have affected the judgment of the jury," and if so, "the

09   conviction must be set aside." *Id.* (*quoting United States v. Agurs,* 427 U.S. 97, 103 (1976)).

10   Specifically, "[t]he question is not whether the defendant would more likely than not have

11   received a different verdict with the evidence, but whether in its absence he received a fair

12   trial, understood as a trial resulting in a verdict worthy of confidence."  *Id.* (noting that a

13   federal habeas court conducting an analysis under *Mooney-Napue* need not also "conduct a

14   separate harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), because

15   the required finding of materiality necessarily compels the conclusion that the error was not

16   harmless.").  *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

17          In the instant case, petitioner is unable to satisfy the requirements of *Mooney-Napue*

18   with respect to either Detective Maldonado's testimony during the preliminary hearing, or

19   Detective Chaplin's arrest report.  As a result, his federal due process claim is unavailing.

20          During direct examination at trial, Detective Maldonado acknowledged that he had

21   testified during the preliminary hearing that law enforcement officers made contact with the

22   confidential informant, Jessie Bennett, on two occasions prior to October 17, 2000.  (*See*

01  Dkt. 19, LD 24 at 239-42.)  He also admitted, however, that he had been mistaken about these

02  prior contacts, because Bennett actually "didn't have any contact [with law enforcement

03  officers] before the 17th." (*Id*. at 242.)  During cross-examination, Detective Maldonado

04  explained that he made this mistake during the preliminary hearing because "there [were]

05  multiple C.I.'s involved in this investigation, and another C.I. that [Detective] Chaplain had

06  was used to do the search warrant for Jessie [Bennett]," which was executed on October 17.

07  (*Id*. at 250).  Thus, Detective Maldonado had "mistakenly referred to the other C.I.," who

08  actually had been contacted by law enforcement officers on several occasions prior to October

09  17, 2000.  (*Id*. at 253.)

10          Furthermore, Detective Maldonado testified that he did not have an opportunity to

11  review the "roughly [300] to 500 page" case file before testifying at the preliminary hearing.

12  He was only in possession of the two-page arrest report drafted by Detective Chaplin, which

13  did not reference any contacts with the confidential informant taking place prior to October

14  17, 2000.  (*See id*. at 240; Dkt. 16, LD 5, Ex. C at 1.)  As a result, Detective Maldonado had

15  relied upon his memory to answer the question regarding prior contacts with the informant,

16  and he made a mistake.  After explaining his error, he testified that his first contact with

17  Bennett actually took place on October 17, 2000, the date of the "controlled buy," and he

18  described his interactions with Bennett in detail.  (*See* Dkt. 19, LD 24 at 241 and 248.)

19          Detective Maldonado did not commit perjury during the preliminary hearing, because

20  his inaccurate testimony was the result of mistake rather than deliberate deception.  *See*

21  *People v. Howard*, 17 Cal.App.4th 999, 1004 (1993) (noting that a witness who gave false

22  testimony is not guilty of perjury if it was "due to confusion, mistake, or faulty memory");

01  Cal. Penal Code § 118 (setting forth the definition of perjury).  Nevertheless, Detective

02  Maldonado admitted that his testimony during the preliminary hearing was "actually false."

03  *See Hayes*, 399 F.3d at 980-81 ("*Napue*, by its terms, addresses the presentation of false

04  evidence, not just subornation of perjury.")  The first requirement under *Mooney-Napue* was

05  therefore satisfied.

06  　　　Petitioner has failed, however, to demonstrate that the prosecution knew or should

07  have known that Detective Maldonado's testimony during the preliminary hearing was

08  actually false.  *See id.* at 984.  Specifically, petitioner did not provide any factual basis for

09  attributing knowledge to the government.  *See Morales,* 388 F.3d at 1179.  Petitioner simply

10  made the conclusory assertion that "Deputy District Attorney Kevin Higgins willfully

11  procured a witness to commit perjury, as the Deputy District Attorney knew that the

12  testimony to be given was false, and this was subornation of perjury…."  (Dkt. 1 at 7.)  He

13  also argued, in his traverse, that "one cannot believe the Deputy District Attorney did not

14  know" the testimony was false "because it is so clear and blatant one cannot help but to

15  recognize the falsehood…."  (Dkt. 21 at 28.)

16  　　　Contrary to petitioner's contentions, the record does not indicate that the Deputy

17  District Attorney either "knew" Detective Maldonado's testimony during the preliminary

18  hearing was false, or allowed the false testimony to go "uncorrected."  *Napue,* 360 U.S. at

19  269.  When the Deputy District Attorney realized that Detective Maldonado's prior testimony

20  was inaccurate, he questioned Detective Maldonado about the discrepancy during direct

21  examination.  (*See* Dkt. 19, LD 24 at 239-42.)  Thus, there is no evidence from which to infer

22  prosecutorial misconduct.  *See Zuno-Arce,* 44 F.3d at 1423.  Where there is no evidence that

01  the prosecution knew, or should have known, that a witness' testimony was false, "[a]t most,

02  two conflicting versions … [have been] presented to the jury.  It [is] within the province of

03  the jury to resolve the disputed testimony."  *See Geston,* 299 F.3d at 1135.

04        Petitioner is also unable to satisfy the requirements of *Mooney-Napue* with respect to

05  Detective Chaplin's arrest report, because he failed to show that any information contained in

06  the report was actually false.  (*See* Dkt. 21 at 22-24.)  Specifically, Detective Chaplin's arrest

07  report did not reference any contacts with the confidential informant prior to October 17,

08  2000, and it did not refer to Bennett as a "reliable" confidential informant.  (Dkt. 16, LD 5,

09  Ex. C at 1.)  Although Detective Maldonado used Detective Chaplin's arrest report to refresh

10  his recollection during the preliminary hearing regarding some details related to the

11  investigation, the report was not the cause of Detective Maldonado's mistaken testimony.  In

12  addition, Detective Chaplin testified at trial that he never considered Bennett a "reliable

13  confidential informant" because Bennett had not "provided information that's been proven"

14  on prior occasions.  (Dkt. 19, LD 24 at 159.)  Rather, Bennett served as a "confidential

15  informant" on October 17, 2000, by providing information related to an ongoing narcotics

16  investigation, which the Sacramento Police Department then corroborated by carrying out a

17  "controlled buy" of narcotics from petitioner.  (*See id*. at 158-59.)

18        Finally, even if Detective Chaplin's arrest report did contain false information,

19  petitioner failed to satisfy the last two requirements under *Mooney-Napue*.  He failed to

20  demonstrate that the prosecution knew or should have known that information in the arrest

21  report was actually false, and he failed to show a "reasonable likelihood that the false

22  [evidence] could have affected the judgment of the jury."  *Hayes*, 399 F.3d at 984.  As a

01 result, petitioner's federal due process claim lacks merit.

02      VI.    CONCLUSION

03     As discussed above, petitioner's rights under the federal Confrontation Clause and

04 Due Process Clause were not violated by the superior court's admission of hearsay statements

05 made by a confidential informant, as related by Detective Maldonado, during his preliminary

06 hearing.  His claim that his federal due process rights were violated by the prosecution's

07 knowing use of perjured testimony during his preliminary hearing, as well as the inclusion of

08 false information in an arrest report, was also unavailing.  As a result, the California Supreme

09 Court's Order denying the instant habeas petition was therefore not contrary to, or an

10 unreasonable application of, clearly established federal law, or based on an unreasonable

11 determination of facts.  I therefore recommend that the Court find that petitioner's

12 constitutional rights were not violated, and that it deny his habeas petition, and dismiss this

13 action with prejudice.

14     This Report and Recommendation is submitted to the United States District Judge

15 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

16 after being served with this Report and Recommendation, any party may file written

17 objections with this Court and serve a copy on all parties.  Such a document should be

18 captioned "Objections to Magistrate Judge's Report and Recommendation."  Failure to file

19 objections within the specified time may waive the right to appeal the District Court's Order.

20     *//*

21     *//*

22     *//*

REPORT AND RECOMMENDATION - 19

01 *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed order accompanies this

02 Report and Recommendation.

03      DATED this 18th day of November, 2009.

04

05

06                                    _____

07                                    JOHN L. WEINBERG
                                      United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION - 20